FILED
2007 Dec-05  AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TODD BURKES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:06-CV-1959-VEH** |
| | ) |
| **HUBBELL STEEL** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION AND BACKGROUND

In this action, Plaintiff Todd Burkes ("Burkes") has sued Defendant Hubbell Steel Corporation ("Hubbell Steel") for federal discrimination claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act (the "ADEA"), and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Pending before the court are Hubbell Steel's Motion for Summary Judgment (Doc. #51) and Motion to Strike (Doc. #60), filed on September 14, 2007, and October 15, 2007, respectively. Burkes has filed oppositions to both of these motions. (Docs. #56, #61), and on October 15, 2007, Hubbell Steel filed its reply brief in support of summary judgment. (Doc. #59).

For the reasons stated hereinafter, Hubbell Steel's Motion for Summary Judgment and Motion to Strike are due to be **GRANTED**.  Alternatively, even considering Burkes's affidavit offered in opposition to summary judgment, Hubbell Steel's Motion for Summary Judgment is still due to be **GRANTED**.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56.  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case,  *McDonnell Douglas Corp. v. Green*, 411 U.S.

2

792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as

modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme

applies only in cases where there is no direct evidence of discrimination, *Grigsby v.*

*Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[1]

Under the *McDonnell Douglas/Burdine* framework, a plaintiff first has the

burden of proving by a preponderance of evidence a *prima facie* case of

discrimination.  Once the plaintiff proves a *prima facie* case, the burden of production

shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

employment decision.  Finally, if the defendant carries its burden, the plaintiff must

either prove by a preponderance of the evidence that the legitimate reasons offered

by the defendant are merely a pretext for discrimination or present sufficient

evidence, of any type, for a reasonable jury to conclude that discrimination was a

"motivating factor" for the employment action, even though defendant's legitimate

reason may also be true or have played some role in the decision.  *McDonnell*

*Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S.

at 101-02.  The court is aware that the summary judgment rule applies in job

---

[1]Burkes only argues that he has established a circumstantial case of discrimination.  (*See* Doc. #56 at 9 ("Assuming arguendo, that the plaintiff has not presented direct evidence of discrimination under the *Price Waterhouse* framework, Mr. Burkes has established a *prima* [sic] case of disparate treatment under the *McDonnell Douglas* and *Burdine* analysis")).

discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012,

1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that

no thumb is to be placed on either side of the scale).

## III.   STATEMENT OF FACTS[2]

### A.   Preliminary Considerations

From a procedural standpoint, Burkes has failed to comply with this court's

order governing summary judgment submissions. (*See* Doc. #10 at Appendix II).

More specifically, Burkes has failed to offer any evidentiary support for those facts

offered by Hubbell Steel that he has denied. (*See generally* Doc. #56). Accordingly,

consistent with Appendix II, it is appropriate for the court to treat all of Hubbell

Steel's facts as admitted.

Moreover, from a more fundamental standpoint, Burkes has failed to meet his

burden on opposition "to go beyond the pleadings and . . . designate 'specific facts

showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S.

---

[2]These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted). Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff. *See Fitzpatrick*, 2 F.3d at 1115. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

317, 324 (1986). If a nonmovant, like Burkes, has failed to provide the court with a substantive response to dispute the movant's statement of facts, this court may receive the movant's factual account as "a *prima facie* showing of its entitlement to judgment." *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

Additionally, in offering his own version of the facts, Burkes has not included any numbering and failed to indicate whether the facts on which he relies are disputed or undisputed. Regardless of these procedural errors, whenever Burkes has adequately disputed a fact offered by Hubbell Steel, the court has accepted Burkes's version.

**B.     Brief Statement of Material Facts**

Hubbell Steel sells steel coils to companies in the building products, construction, and automotive industries. Hubbell Steel's Fairfield, Alabama facility utilizes a slitter machine to cut steel coils to meet the specifications of end users.

Burkes worked for Hubbell Steel, a processor of steel coils, as a lead person in charge of slitter operations from 1998 until July 2005, when Hubbell Steel terminated his employment. Hubbell Steel maintains that Burkes was discharged for failing to perform his duties as a lead person after several previous counseling sessions about his performance.

More specifically, it is undisputed that, in June 2005, while the plant manager was out of town, Hubbell Steel's Director of Operations, Joseph Lux ("Lux"), received two corroborating complaints, one from a black employee and one from a white employee, concerning Burkes's refusal to perform his duties and assist with a rush order that was being prepared for one of Hubbell Steel's new clients. In light of the complaints of June 2005, which further evidenced Burkes's continuing failure to improve his performance despite repeated counseling by his supervisor in the preceding months and Burkes's apparent lack of concern for his duties and the success of Hubbell Steel's operations, Hubbell Steel terminated Burkes's employment.

It is also undisputed that upon Burkes's discharge from Hubbell Steel, the position that he had held with the company remained unfilled. It is also undisputed that no evidence exists to show that the relevant decision maker, Lux, was aware of Burkes's protected status under the ADEA or of Burkes's complaints about his work environment to Hubbell Steel's Plant Manager, John Clifton ("Clifton").

Finally, based upon Burkes's deposition testimony, the shortest elapse of time that he relies upon to support his retaliation claim is three (3) months.[3]

---

[3]Burkes's affidavit offered in opposition to summary judgment references other complaints that he made about discrimination, including within a few months of his dismissal. (*See generally* Doc. #60 at Ex. A). Burkes's affidavit is the subject of

## IV.   ANALYSIS

### A.   Burkes's *prima facie* case of discriminatory discharge based upon race fails.

To establish a *prima facie* case in discipline or discharge cases, a plaintiff must demonstrate that:  (1) he is a member of a protected class; (2) he was qualified for the job he held; (3) he was discharged or disciplined; and (4) plaintiff's former position was filled by someone outside his protected class or a similarly-situated employee not in plaintiff's class engaged in nearly identical conduct but avoided plaintiff's fate.[4] *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).  Burkes's *prima facie* case fails because he can neither show that his position was filled by someone outside his protected class nor identify a similarly situated white employee who received

---

Hubbell Steel's Motion to Strike. Because Burkes's affidavit conflicts with his previously sworn deposition testimony and provides no explanation for the discrepancy, Hubbell Steel's Motion to Strike is well-taken and is due to be **GRANTED**.  A "party cannot . . . create . . . an issue [of fact] with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assoc. Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Alternatively, Hubbell  Steel's Motion to Strike is due to be denied **DENIED** as **MOOT** because Burkes is unable to show any evidence of prior knowledge on the part of decision-maker Lux as to any protected expression by Burkes to Clifton.  Such chronological proof is essential to establish the causation element to a retaliation claim.  *See infra*, at 15-16.

[4]"Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under section[] 1981 [], the legal elements of the claims are identical." *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985). Accordingly, the court does not address each claim separately in its analysis. *Id.*

more favorable treatment.

Although the *prima facie* requirements are not to be rigidly construed, the Eleventh Circuit has warned that courts cannot "ignore the failure to present evidence of discrimination." *Hawkins v. Ceco Corp.*, 883 F.2d 977, 984 (11th Cir. 1989). The purpose of the *prima facie* case, particularly the fourth element, "is to identify 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion.'" *Hawkins*, 883 F.2d at 984 (quoting *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir. 1982)).

There is no dispute that Burkes's position was not filled following his termination. As for Burkes's efforts to show comparator evidence, in his sworn statements to the EEOC and in his deposition testimony, he identified Jimmy Perry ("Perry"), a black male, as the employee treated more favorably by Hubbell Steel. (Burkes Dep. at 119-120; Burkes Dep. at Ex. 10 (EEOC Charge Questionnaire) at 4)).[5] As Perry is not a similarly situated employee outside of Burkes's protected class, Burkes cannot establish the fourth element of his *prima facie* case based upon Hubbell Steel's treatment of him. *See Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th

---

[5]The entire body of evidence upon which Hubbell Steel relies in support of summary judgment is located at Docs. #52 and #53 of the court's record.

Cir. 2003) (affirming summary judgment based on lack of a *prima facie* case where "three of the individuals to which Gilmore compares herself are members of the same protected group as Gilmore").

Likewise, Burkes cannot rely upon Hubbell Steel's treatment of Billy Smith ("Smith") to satisfy the fourth *prima facie* element.  While Smith is white and, therefore, outside Burkes's protected class, Smith and Burkes are not similarly situated.  As the Eleventh Circuit explained in *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1273 (11th Cir. 2004),"[w]hen comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides the [protected trait], since different treatment of *dissimilarly* situated persons does not violate civil rights laws." (emphasis in original).

More specifically, unlike Burkes, Smith never received an overall performance evaluation rating of "needs improvement."  (Lux. Dep. at 293-94).  Smith was never the subject of employee complaints about his inability or unwillingness to do his part in getting an order out.  (Lux Dep. at 295).  In contrast to Burkes, who required repeated counseling about his job performance in 2005, Smith was never counseled about performance related issues.  (Lux. Dep. at  295 (stating that Smith "had no problems")).

9

Finally, the Eleventh Circuit requires the comparator to be accused of conduct that is "nearly identical," *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), and there is no evidence that Smith was ever the subject of two corroborating complaints for failure to assist in getting a rush order out for a new customer.[6]   (Hubbell Steel's Revised and Supplemental Answers, Responses and Objections to Burkes's Interrogatories and Requests for Production, at Int.  No. 4 and Request for Prod. No. 4; Lux Dep. at 295).   In light of these dramatic differences between Burkes and  Smith, they are not similarly situated.  *See Mathis v. Wachovia Bank*, No. 07-11528, 2007 WL 3357732, at *3 (11th Cir. Nov. 14, 2007) ("We have explained that we require "'the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)).

Because neither Perry nor Smith are proper comparators under the law of this Circuit and there is no evidence that Burkes was replaced by someone outside of his

---

[6]While Burkes attempts to create a material factual dispute over Smith's "even more serious offense" involving a threat to an African-American employee with a deadly weapon (Doc. #56 at 13), there is no evidence to support that Lux, the relevant decision-maker concerning Burkes's termination, was aware of this reported incident about Smith.  (Lux Depo. at 239, 294; Farley Aff. ¶ 5 (noting report to Clifton not Lux)).

protected class, he cannot establish his *prima facie* case of discriminatory discharge. Accordingly, summary judgment is due to be granted as to Burkes's race discrimination claim.

**B.     Burkes's *prima facie* case of discriminatory discharge based upon age fails.**

To establish a *prima facie* case of age discrimination, a plaintiff must demonstrate that: (1) he is over the age of forty; (2) he was discharged; (3) he was qualified for the position from which he was discharged; and (4) and he was replaced by a younger person. *Elrod v. Sears Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Burkes's age discrimination claim rests entirely on his contention that Perry, a younger black male, became the slitter operator after Burkes was promoted. (Burkes Dep. at 193-94). However, Burkes has no evidence of an employee who replaced him as lead person, the position he occupied when his employment was terminated. Relatedly, Burkes has no comparator evidence of an employee outside of his protected age group whom Hubbell Steel treated more favorable. Therefore, because Burkes was not replaced by a younger person and he has no suitable comparator evidence, he cannot establish a *prima facie* case of age discrimination, and summary judgment is due to be entered in Hubbell Steel's favor on his ADEA discriminatory discharge claim.

11

Additionally, Burkes's age discrimination claim fails for a second reason–he is unable to demonstrate that Lux, the decision-maker with regard to his discharge, knew of Burkes's protected age status.  As the Eleventh Circuit has made clear, "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera*, 244 F.3d at 1262.  Therefore, to raise an inference of discrimination, a plaintiff must demonstrate that the challenged employment decision was made by someone who was aware of the plaintiff's status as a member of the protected class. *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002) ("[W]hen we evaluate a charge of disparate treatment employment discrimination, we must focus on the actual knowledge and actions of the decision-maker.") (citations omitted); *Phillips v. TXU Corp.*, No. 3:05-CV-1588-B, 2006 WL 3900112, *6 (N.D. Tex. Dec. 29, 2006) (granting employer's motion for summary judgment on plaintiff's race discrimination and retaliation claims because the decision-makers were unaware of plaintiff's race when they decided not to re-hire her).

It is undisputed that Lux was unaware of Burkes's age at the time he made the decision to terminate his employment.  (Lux Aff. ¶ 9).  Lux did not hire Burkes in 1998 or have reason to review hiring documents that might reflect his date of birth. (Lux Dep. at 133; Lux Aff. ¶ 9).  Because Burkes cannot demonstrate that Lux was

12

aware of his protected age status, Burkes cannot establish a *prima facie* case of age discrimination for this alternative reason.  As such, summary judgment is due to be granted on Burkes's age discrimination claim.

### C.    Burkes's *prima facie* case of retaliatory discharge fails.

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).  Burkes is unable to show a *prima facie* case of retaliation because the generalized complaints upon which he relies[7] do not constitute statutorily protected expression and because he cannot demonstrate a sufficient causal link.

As to the first point, generalized complaints of "being mistreated" are not considered protected activity under the federal anti-discrimination statutes.  *See, e.g.*, *Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir. 1995) ("a general complaint of unfair treatment does not translate into a charge of illegal . . . discrimination"); *Harris v. Maryland House of Correction*, 209 F. Supp. 2d 565, 570 (D. Md. 2002) (recognizing that general complaints about "unfair treatment" are insufficient to support a Title VII retaliation claim).  Except for a vague reference six

---

[7]*See supra*, at 13-14.

months prior to his termination to a white employee "bossing" black employees that Burkes felt he should have been ordering around instead, Burkes's deposition testimony confirms that Burkes made no allegations of race-related or age-related discriminatory conduct to Hubbell Steel's management.  Instead, Burkes made a series of general complaints about his work situation and his fellow employees, and these general allegations of mistreatment fall far short of the protected activity required to sustain a retaliation claim.  As such, Burkes cannot establish the third element of his *prima facie* case.

As to the second point, Burkes is unable to show a causal connection.  A three (3) month period between the last alleged protected conduct and an adverse employment action is insufficient as a matter of law to establish the requisite causal connection for a retaliation claim.  *See, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing affirmatively several court of appeals decisions for the proposition that a three (3) to four (4) month gap is insufficient to establish the causal relation prong in a retaliation case based upon federal civil rights statute); *Thomas v. Cooper Lighting, Inc.*, No. 07-10233, 2007 WL 3310174, at *2 (11th Cir. Nov. 9, 2007) ("Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law. . . .  That three (3) month period,

without more, does not rise to the level of 'very close.'") (citations omitted); *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (holding three and one-half (3 1/2) month period between plaintiff's protected conduct and the adverse employment action was insufficient to establish a causal connection).

Moreover, Burkes admits that he has no evidence that any of his complaints to Clifton were relayed to Lux, the individual who made the decision concerning his separation. (Burkes Dep. at 163-64).   Relatedly, Lux denies ever receiving a complaint of discrimination from Burkes.   (Lux Dep. at 147-49).   To link his complaints to a subsequent adverse action, Burkes must demonstrate that the relevant decision maker was aware of his complaints.[8]  *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) ("Gupta presented sufficient evidence at trial that the decision-makers were aware that she had filed a complaint against the University."). Therefore, because Burkes cannot establish a causal connection between his

---

[8] Burkes's efforts to link Smith, under a cat's paw theory, as an integral part to Lux's decision to fire him, are unavailing.  In particular, it is undisputed that Lux conducted an independent investigation (including eye-witness corroboration) into the complaints made about Burkes that were reported to him by Smith, without receiving any recommendation from Smith that Burkes should be discharged.  *See, e.g., Llampallas v. Mini-Circuits, Lab., Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) (describing cat's paw theory to include a rubber-stamping by titled decision maker of recommendation made by another employee with potential discriminatory (or retaliatory) animus towards plaintiff).

complaints and his separation, summary judgment is due to be granted on his retaliation claim for this alternative reason.

### D.   Alternatively, Burkes's discrimination and retaliation claims fail because he cannot show pretext.

The law of the Eleventh Circuit is clear that "in order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (citation omitted). Burkes must meet each of Hubbell Steel's reasons "head on" with a rebuttal. *Id.* at 1030. He "cannot succeed by simply quarreling with the wisdom" of the proffered reasons. *Id.*

In his response to summary judgment, Burkes does not address the reasons for his termination head on and rebut them. *Chapman*, 229 F.3d at 1030. Burkes has not presented any evidence demonstrating that Lux did not genuinely believe based upon his reasonable investigation that Burkes failed to assist with a critical rush order for a new client in June 2005. *See EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176-1177 (11th Cir. 2000). Moreover, Burkes's beliefs are not enough to show pretext. As the Eleventh Circuit has explained, "[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."

*Holifield*, 115 F.3d at 1565; *see also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

Burkes's arguments entirely fail to address the fact he was terminated for failing to perform his job.  Relatedly, statements by counsel in a brief are not admissible evidence and cannot be used to rebut Hubbell Steel's otherwise legitimate articulated reasons for firing Burkes.  *Cf. Jean v. Nelson*, 711 F.2d 1455, 1501-02 (11th Cir. 1983) ("The government's case therefore consisted of nothing but 'mere protestation' and 'arguments of counsel.'  These do not constitute rebuttal of a *prima facie* case of discrimination.") (citations omitted).  Accordingly, summary judgment is due to be entered on Burkes's discrimination and retaliation claims due to his inability to establish pretext.

### E.      Burkes's discriminatory pay claim also fails.

In addition to the claims stemming from his discharge, Burkes also contends that, because of his race, Hubbell Steel did not give him a raise when he received his promotion to lead person in January 2004. (Doc. #29 ¶ 12).  In plain refute of this allegation, the uncontroverted evidence shows that Burkes received a $.50 per hour raise in January 2004, $.25 of which represented a raise for Burkes's promotion to

17

lead person.  (Burkes Dep. at 63; *id.* at Ex. 3; Lux Dep. at 195).

Burkes expressly admitted in his sworn deposition testimony that he received a raise in January 2004, which is when he was promoted to lead person.  (Burkes Dep. at 63).  Similarly, his payroll records with Hubbell Steel confirm that he received a pay increase.  (Burkes Depo. at Ex. 3).

Burkes cannot now create an issue of material fact by claiming, without any evidentiary support, that he did not receive a raise.  As the United States Supreme Court recently made clear in *Scott v. Harris*, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.*, __ U.S. __, 127 S. Ct. 1769, 1776 (2007).

Similarly, Burkes's late efforts to rely upon Hubbell Steel's treatment of Smith in January 2002 when Hubbell Steel moved Smith to the position of production supervisor, do not provide adequate evidence of pay discrimination.[9]  To establish a

---

[9]During his deposition, Burkes claimed that he was basing his pay discrimination claim on Hubbell Steel's treatment of Smith when he became a shipping supervisor in May 2004.  (Burkes Dep. 135-37).  This theory fails because the record shows that Smith did not receive any raise pertaining to this particular position.  (Lux. Aff. at Ex. C).  Now Burkes argues instead that Smith's higher incremental raise increase in January 2002 establishes a discriminatory pay claim. (Doc. #56 at 23).

*prima facie* case of discrimination as to pay, Burkes must show that "the job [ ]he occupied was similar to *higher paying jobs* occupied by [persons outside Burkes's protected class]." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992) (emphasis added).  The record in this case shows that Smith was paid less than Burkes in the position of production supervisor; therefore, Smith is not a proper comparator for a wage discrimination claim.  *See, e.g., Camp v. Walton Regional Med. Ctr.*, No. 3:06-CV-19 (CDL), 2007 WL 2027734, at *2 n.2 (M.D. Ga. July 12, 2007) ("Consequently neither Patricia Galloway nor Jill Williams are proper comparators that show that Plaintiff was paid less than similarly situated white females employed by WRMC.").

Alternatively, to the extent that Smith could be deemed to be an appropriate comparator of Burkes as to pay increases, Burkes has failed to show evidence of any pretext in Hubbell Steel's explanation for its varying treatment of them.  More specifically, as Hubbell Steel explains, any larger incremental increases given to Smith are legitimate given his lower starting rate of pay and his significant production and supervisory experience.  (Doc. #59 at 10; Lux Dep. at 186).

**F.    Burkes no longer seeks any recovery for emotional distress damages.**

Regardless of the viability of Burkes' various claims, he has stipulated on the

record that he is not seeking damages for emotional distress in this action (Burkes Dep. at 221-22), the allegations of his complaint notwithstanding.  (Doc. #29 ¶¶ 21, 24, 30, 35, 40).  Moreover, Burkes's silence when filing his opposition to summary judgment on this particular point made by Hubbell Steel confirms the concession that he made during his deposition.  Thus, Burkes has abandoned any claim for damages for emotional distress.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned).

## V.    CONCLUSION

For the reasons stated above, Hubbell Steel's Motion for Summary Judgment (Doc. #51) is due to be **GRANTED** as to all his discriminatory discharge and retaliation claims asserted under § 1981, Title VII, and the ADEA.  More specifically, Burkes is unable to establish the *prima facie* elements necessary to support any of these claims; alternatively, he cannot show pretext.  Summary judgment is also due to be **GRANTED** in favor of Hubbell Steel on Burkes's discriminatory pay claim due to a failure of proof.  Further, Hubbell Steel's Motion to Strike  (Doc. #60) is due to be **GRANTED** or alternatively is **MOOT** to the extent addressed within this memorandum opinion.  A separate order will be entered.

**DONE** and **ORDERED** this 5th day of December, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge